**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:25-CR-186-3 |
| | ) | |
| JHON CANIZALES-SOTO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER

Defendant Jhon Canizales-Soto moved to suppress physical evidence seized after law enforcement stopped an Uber in which he was a passenger (ECF 1313). After reviewing the motion and supporting brief, the government's response (ECF 1355), and the evidence presented at the suppression hearing held on July 31, 2026, the Court DENIES the motion for the reasons below.

## BACKGROUND

The following factual findings are based on DEA Special Agent Daniel Hoormann's credible testimony at the July 31, 2026, suppression hearing, as well as the exhibits submitted into evidence

On April 12, 2023, law-enforcement officers were conducting surveillance on 1620 Riverside Drive in New Kensington and on a green Toyota Prius car when they observed Francisco Vasquez-Chavez carrying a black backpack that looked full. Law-enforcement officers observed Mr. Vasquez-Chavez leave 1620 Riverside, get into the Prius, and drive into a parking lot in New Kensington. He drove in a circle and left the parking lot. Then the Prius entered a parking lot at 200 Tarentum Bridge Road and parked. The Prius then drove into a Giant Eagle parking lot and Mr. Vasquez-Chavez exited the Prius while talking on a cellphone. He waved towards the Quality Inn Hotel on Tarentum Bridge Road.

- 1 -

At this point, Mr. Canizales-Soto walked towards the Prius carrying a black backpack and holding a cellphone chest-high.  Another person, Marcos Francisco-Tomas, then moved to the back passenger seat of the Prius, and Mr. Canizales-Soto sat in the front passenger seat.  The Prius circled around the lot and then stopped in the Zen Leaf Dispensary parking lot on Tarentum Bridge Road.  Mr. Canizales-Soto got out of the car without any bags and entered the Zen Leaf Dispensary.  Ten minutes later, he got back into the front passenger seat of the Prius.

The Prius then pulled into a Sunoco lot on Tarentum Bridge Road.  The Prius parked, and Mr. Canizales-Soto went into the Sunoco.  He then came out with a white bag, got into the Prius, and then the Prius drove away from the Sunoco.  The Prius then traveled to a Staples on Tarentum Bridge Road where Mr. Canizales-Soto exited the Prius, went into the Staples, came out, and manipulated some items in a backpack.

At this point, a Camry pulled into the parking lot, and Mr. Canizales-Soto got into the Camry with his black backpack, a Sunoco bag, and a Walmart bag.  Officers then pulled over the Camry, learned that it was an Uber, and began speaking with Mr. Canizales-Soto directly.  Officers did not place him into handcuffs.  Officers asked to search his baggage, and Mr. Canizales-Soto consented; he signed a 'consent form' that officers made on the spot because they did not have a consent form on them at the time.  Gov't Exhibit 1.

The paper that Mr. Canizales-Soto signed read: "I  J[hon] Caniazles-Soto give consent to officers to search my baggage. (Bookbag)."  DEA Special Agent Daniel Hoormann credibly testified that the paper initially read just "baggage," and an officer executed the search of Mr. Canizales-Soto's "baggage" (*i.e.*, the black backpack, the Walmart bag, and the Sunoco bag), based on that consent.  He credibly testified that he and another officer, Trooper Williams, believed that the scope of the consent extended to all three bags that Mr. Canizales-Soto had with him, not just the

- 2 -

backpack. So Trooper Williams searched the Walmart bag and found three heat-sealed bags of bulk currency covered in several layers of plastic, spices, and barbeque sauce.[1] But when Trooper Williams found the bulk currency, Mr. Canizales-Soto said that he had only meant to consent to the search of the backpack, not the Walmart and Sunoco bags. So officers allowed him to add "(Bookbag)" to the consent form to clarify. Officers seized the bulk currency and a cell phone and eventually obtained a search warrant to search the contents of the cell phone.

## DISCUSSION & ANALYSIS

Mr. Canizales-Soto advances two main arguments: (1) officers did not have reasonable suspicion to stop the Uber in which Mr. Canizales-Soto was a passenger; and (2) Mr. Canizales-Soto did not consent to the search of a Walmart bag in which Trooper Williams recovered bulk currency.

As to the first argument, Special Agent Hoormann credibly testified that law-enforcement officers had ample reasonable suspicion of drug activity to stop the Uber in which Mr. Canizales-Soto was a passenger. *See* ECF 1355-4. Officers had observed Mr. Canizales-Soto interacting with Mr. Vazquez-Chavez and Mr. Francisco-Tomas, both of whom law enforcement had been surveilling for over a year in relation to suspected drug trafficking. *Id.* The Prius had previously been linked to the drug-trafficking operation. *Id.* And on the day of the stop involving Mr. Canizales-Soto, Mr. Vazquez-Chavez had come from a property—1620 Riverside—that had been under investigation. Then the officers observed the men transporting backpacks, circling in parking lots, and rotating drivers. Special Agent Hoormann credibly testified that based on his training and experience, this behavior is common for individuals who may be avoiding surveillance or conducting countersurveillance.

---

[1] Special Agent Hoormann credibly testified that masking the scent of bulk currency with spices or barbeque sauce is common in drug trafficking operations.

And he also credibly testified that the transactions here preceding the stop appeared to look like some type of drug or illegal cash transaction. Considering all this, officers had reasonable suspicion to initiate a stop of the Camry. *See United States v. Robinson*, 305 F.3d 164, 167 (3d Cir. 2002) (courts may consider an officer's "knowledge, experience, and common-sense judgments about human behavior" when evaluating whether an officer had reasonable suspicion to conduct a stop).[2]

As to the second argument, Special Agent Hoormann credibly testified that Mr. Canizales-Soto consented to the search of his bags (*i.e.*, he signed a piece of paper that functioned as a consent form stating that Mr. Canizales-Soto consented to the search of his "baggage"). It was objectively reasonable for both officers to believe that "baggage" included all the bags, including the Walmart bag in which the cash was found. *See, e.g.*, *Florida v. Jimeno,* 500 U.S. 248 (1991) (holding that defendant's right to be free from unreasonable searches was not violated when, after he gave police officer permission to search his automobile, officer opened closed container found within car that might reasonably hold object of search); *United States v. Kim*, 27 F.3d 947, 957 (3d Cir. 1994) (finding that a reasonable officer could conclude that defendant's general consent to "search luggage" extended to the contents of the luggage). That Mr. Canizales-Soto changed his mind and wrote "backpack" on the form *after* the search of the Walmart bag is irrelevant.

Additionally, there was nothing about the interaction between officers and Mr. Canizales-Soto that would suggest that the consent was not given voluntarily. Mr. Canizales-Soto was not handcuffed; there were only two officers on scene; the

---

[2] That Mr. Canizales-Soto was a passenger in an Uber does not materially change the fact that officers had reasonable suspicion to conduct a stop of the Camry. *See United States v. Febles*, No. CR 21-386, 2022 WL 17477914, at *6 (E.D. Pa. Dec. 6, 2022) (analyzing a traffic stop involving an Uber and defendant passenger under a standard vehicle-stop analysis, and finding that defendant consented to the search of his backpack).

interaction appeared to last only a few minutes; and there is no evidence that the officers had drawn their weapons. Based on these circumstances, the consent was voluntarily given. *See United States v. Givan*, 320 F.3d 452, 459–60 (3d Cir. 2003) (finding that voluntary consent in traffic stops involves a totality-of-the-circumstances review and can include the nature of the conversation between officer and defendant, or no evidence of duress or coercion).[3]

### CONCLUSION

For the reasons above, the Court DENIES Mr. Canizales-Soto's motion to suppress (ECF 1313).

DATE: August 3, 2026                         BY THE COURT:

                                             /s/ *J. Nicholas Ranjan*
                                             United States District Judge

---

[3] The Court notes that Mr. Canizales-Soto did not challenge the search warrant probable-cause affidavit that was eventually executed to search the contents of his cell phone. So the Court does not address the validity of the search warrant.